# EXHIBIT 1

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | SIXTEENTH JUDICIAL CIRCUIT |
| COUNTY OF YORK | ) | CIVIL ACTION NO: 2025-CP- _____ |

|  |  |  |
|---|---|---|
| Brian Musgrave, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **SUMMONS** |
| vs. | ) | (Defamation Per Se / Libel Per Se) |
| | ) | |
| Herring Networks, Inc., Dan Ball, | ) | |
| Louder with Crowder, LLC, Steven | ) | **JURY TRIAL DEMANDED!** |
| Crowder, Gerald Morgan, Jr., | ) | |
| | ) | |
| Defendants. | ) | |

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Charleston, South Carolina
October 1, 2025

**BLAND RICHTER, LLP**
*Attorneys for Plaintiffs*

*s/Ronald L. Richter, Jr.*
Ronald L. Richter, Jr. (SC Bar No. 66377)
*s/Scott M. Mongillo*
Scott M. Mongillo (SC Bar No. 16574)
Peoples Building
18 Broad Street, Mezzanine
Charleston, South Carolina 29401
T: 843.573.9900 | F: 843.573.0200
ronnie@blandrichter.com
scott@blandrichter.com

*s/Eric S. Bland*
Eric S. Bland (SC Bar No. 64132)
105 West Main Street, Suite D
Lexington, South Carolina 29072
T: 803.256.9664 | F: 803.256.3056
ericbland@blandrichter.com

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | SIXTEENTH JUDICIAL CIRCUIT |
| COUNTY OF YORK | ) | CIVIL ACTION NO: 2025-CP-_____ |
| | ) | |
| Brian Musgrave, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | (Defamation Per Se / Libel Per Se) |
| | ) | |
| Herring Networks, Inc., Dan Ball, | ) | |
| Louder with Crowder, LLC, Steven | ) | **JURY TRIAL DEMANDED!** |
| Crowder, Gerald Morgan, Jr., | ) | |
| | ) | |
| Defendant. | | |

The Plaintiff, complaining of the conduct of the Defendants herein, alleges as follows:

### Introduction

On the evening of February 10, 2025, Congresswoman Nancy Mace took to the floor of Congress purportedly to call to light the epidemic of sexual assault against women by sharing allegations involving her personal story of rape, voyeurism and sex trafficking at the hands of her ex-fiancé, Patrick Bryant.  In reality, Ms. Mace's speech was nothing more than the culmination of a campaign of blackmail and extorsion against her ex-fiancé after he refused to capitulate to her demands for money and for possession of property that they previously owned together.  As for the Plaintiff, he became collateral damage.

In her approximately hour-long presentation, Congresswoman Mace shared intimate details of how she was allegedly incapacitated, sexually violated and filmed by others.  In addition to her ex-fiancé, Congresswoman Mace identified three other males by name and by photograph who she described as rapists, predators and sex traffickers – including Brian Musgrave of Fort Mill, South Carolina.

Just hours before the speech, Brian Musgrave was running errands and was parked in a Lowe's parking lot in his hometown of Fort Mill, South Carolina, when he received an odd text from someone purporting to be a reporter with the Wall Street Journal. The text inquired whether Brian wished to comment on the speech that Nancy Mace intended to deliver from the floor of Congress later that evening, a speech in which Brian Musgrave's name would be mentioned. Brian did a quick Google search and verified that the person who sent the text was in fact a reporter with the Wall Street Journal. Brian then searched "Nancy Mace floor speech" and realized it was real – he was in fact about to be named in a speech by Nancy Mace. Brian spent the hours leading up to the speech calling friends and relatives to let them know that his name and likeness would appear on the floor of Congress and that he would be falsely accused of being a rapist, a predator and a sex trafficker.

Brian Musgrave's only nexus to Congresswoman Mace's speech is his longtime friendship with Mace's ex-fiancé through which the two men own an investment condominium and a home together on the Isle of Palms. Mace's ex-fiancé resided periodically at the Isle of Palms condominium. It is at this property that Mace alleges she and/or others were incapacitated, raped and filmed.

- Brian Musgrave was not present.

- Brian Musgrave did not incapacitate anyone.

- Brian Musgrave did not assist anyone in Mace's alleged rape.

- Brian Musgrave did not film anyone.

- Brian Musgrave has never seen any film or other image depicting the alleged rape of Congresswoman Mace or any other woman.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

While Brian Musgrave was aware that his friend had placed a Google camera on top of the refrigerator in plain view in the condominium they own jointly together through a limited liability company, he never had access to the camera and never used it to film or view anyone.  Musgrave had seen his friend and Ms. Mace together on a handful of occasions.  While Musgrave and Mace's ex-fiancé are longtime friends, they are predominantly long-distance friends as well.

A media firestorm followed Ms. Mace's speech through which her defamatory accusations against Brian Musgrave were adopted, amplified and/or republished repeatedly through news media outlets and podcasts.  Brian Musgrave sued Nancy Mace for defamation in the United States District Court for the District of South Carolina, Charleston Division.  By Order of the United States District Court, Ms. Mace was deemed to be protected from suit by a cloak of immunity that members of the United States Congress had granted to themselves pursuant to the Westfall Act. The media outlets who adopted, amplified and/or republished Ms. Mace's defamatory accusations do not share her cloak of immunity.  Brian Musgrave is entitled to the restoration of his good name and reputation, as well as to compensatory and punitive damages to all outlets who pleasured and profited in the destruction of his good name and reputation.

**Parties and Jurisdiction**

1.      The Plaintiff, Brian Musgrave ("Brian" or "Musgrave") is a citizen and resident of York County, South Carolina.

2.      Upon information and belief, Defendant Herring Networks, Inc. is a media company based in San Diego, California, that produces news and entertainment programming through the One America News Network (hereinafter "Defendant OAN").

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

3.       Upon information and belief, Defendant Dan Ball ("Defendant Ball") is a citizen and resident of San Diego, California, who appears on news and entertainment programming through Defendant OAN.

4.       Upon information and belief, Defendant Louder with Crowder, LLC, is a media company based in Dallas, Texas, that produces a news and entertainment podcast under the name "Louder with Crowder." (Hereinafter "Defendant Crowder Show").

5.       Upon information and belief, Defendant Steven Crowder ("Defendant Crowder") is a citizen and resident of Dallas, Texas, who appears on Defendant Crowder Show.

6.       Upon information and belief, Defendant Gerald Morgan, Jr. ("Defendant Morgan") is a citizen and resident of Dallas, Texas, who appears on Defendant Crowder Show.

7.       The Defendants broadcast their content within the State of South Carolina and transact business within the State of South Carolina, as a result of which the Defendants named herein are subject to jurisdiction within the State of South Carolina in accordance with the South Carolina Long Arm Statute.

8.       The defamation complained of herein resulted in tortious injury in the State of South Carolina, as a result of which the Defendants named herein are subject to jurisdiction within the State of South Carolina in accordance with the South Carolina Long Arm Statute.

9.       This Court has jurisdiction over the parties to and the subject matter of this litigation.

## Factual Background

10.     Brian Musgrave resides in Fort Mill with his wife, Jen, of 23 years.  They have a son and a daughter together.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

11.     Brian first met his friend Patrick Bryant ("Bryant") when they were in 10th grade. They have remained friends ever since.

12.     Throughout his adult life, Musgrave has resided predominantly in the Fort Mill, South Carolina area, while Bryant has resided primarily in and around Charleston, South Carolina.

13.     As friends, Musgrave and Bryant have always talked, texted and emailed on a regular basis and have made time periodically for their paths to cross socially, vacationed together with their spouses and worked together professionally on common business interests.

14.     Bryant was formerly married for approximately twenty (20) years, until his divorce in or around 2017.

15.     During the time that both Musgrave and Bryant were married, they traveled together occasionally as couples and otherwise enjoyed a healthy married couples' relationship growing their families and careers together.

16.     In or around 2010, Musgrave and Bryant first invested in a beach condominium on the Isle of Palms.  They purchased the condominium with the plan of renting it and generating enough income through rental to defray the cost of ownership, while still leaving time for their respective families to enjoy the condominium for beach vacations and/or periodic use.

17.     It was intended to be a family beach vacation home shared between the Musgrave and Bryant families.

18.     While the unit number has changed over the years, Musgrave and Bryant have held an interest in a beach condominium on the Isle of Palms and joint ownership in a single-family home consistently since 2010.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

19.     Following his divorce, Bryant periodically resided in the beach condominium, which both lessened the income that it could generate and decreased the time it was available for Musgrave's personal use with his family.  Even so, Bryant paid for his use of the condo.

20.     Still, Bryant was Musgrave's friend, and Musgrave was happy to accommodate his friend in the disorienting time following a divorce.

21.     At some point in time, Musgrave became aware that Bryant had placed a Google camera in plain view on top of the refrigerator in the kitchen of the condominium unit and assumed that he used it for security or other such similar purposes.  The camera is depicted in the picture below:



22.     Based on the layout of the condominium, the camera on top of the refrigerator was in plain view to anyone entering the unit and the camera would be able to see the kitchen and living room areas of the condominium, but not the bedrooms which were down hallways and behind doors.

23.     Musgrave never had electronic access to the camera.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

24.     Musgrave never used the camera for surveillance.

25.     Musgrave never used the camera to record any activity within the condominium, if indeed the camera was capable of making recordings.

26.     If recordings were made with the camera, Musgrave never viewed them.

27.     To Musgrave's knowledge, the only camera that ever existed at the condominium was the Google camera that Bryant had placed on top of the refrigerator.

28.     Moreover, Musgrave never installed any camera within the property for any purpose.

29.     Following Bryant's divorce, Musgrave recalls that his friend had a few romantic relationships with women before meeting Congresswoman Nancy Mace.

30.     Musgrave further recalls Bryant having a few relationships after his first break up with Ms. Mace and before their eventual engagement.

31.     While Musgrave did not have a great deal of interaction with Bryant and Mace as a couple, from Musgrave's perspective, it appeared that Bryant and Mace were very much in love leading up to the time that the couple got engaged.

32.     Upon information and belief, Bryant and Mace purchased real estate together, including properties on the Isle of Palms and in Washington, DC.

33.     To the best of Musgrave's recollection, Bryant's relationship with Mace began to sour in or around November, 2023.

34.     Upon information and belief, it was in or around November, 2023 when Nancy Mace gained access to Bryant's cell phone without his consent.

35.     According to Ms. Mace, it was then that she discovered thousands of images of women in compromising positions, including images and/or videos of women being raped.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

36.     For Mace, the relationship was over – all that remained was her demands for money and the division of the properties that the couple owned together.

37.     Upon information and belief, Mace approached her campaign manager at the time, Wesley Donehue ("Donehue"), and shared some of the "evidence" that she had discovered on Bryant's phone.

38.     Upon information and belief, Mace did not share with Donehue any allegation that she (or anyone else) had been raped.

39.     Upon information and belief, Mace did not share with Donehue any plan to use what she had discovered to advance any legislative initiatives to protect women.

40.     Upon information and belief, Mace sought to recruit Donehue instead to use the "evidence" to blackmail Bryant into capitulating to her demands for money and/or for the division of the properties that they owned together.

41.     Upon information and belief, on or about March 27, 2024, Mace tasked Donehue with approaching Bryant to demand that if he did not give her 100% of the interests in both the Isle of Palms and Washington, DC properties, she would destroy Bryant by making the pictures she found on his phone public.

42.     Upon information and belief, Donehue refused to carry the message to Bryant and ultimately resigned as Mace's campaign manager in part over his concerns about the propriety of Mace's efforts to blackmail Bryant.

43.     In addition to recruiting Donehue to aid in her campaign against Bryant, Mace also unsuccessfully reached out to and sought to recruit other third parties to whom she shared her beliefs that Bryant was a rapist and a voyeur.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

44.     On or about November 13, 2023, Mace sent an evidence preservation letter which instructed Bryant to preserve the information on his phone and warned Bryant that the images on his phone would be released publicly, and that Bryant would face disastrous financial consequences unless their dispute was resolved.

45.     On information and belief, Mace told Bryant that if he did not relinquish 100% of the interests in the Isle of Palms and Washington, DC properties, he would face criminal prosecution and he would be destroyed publicly through the release of the "evidence" that she had gathered from his phone.

46.     Upon information and belief, Bryant refused to bend to the demands.

47.     Upon information and belief, when it became apparent to Ms. Mace that Bryant would not bend to her demands, Ms. Mace plotted to make good on the threat to destroy Patrick Bryant.

48.     While Musgrave knew that the relationship between his friend and Ms. Mace had become contentious, Musgrave never heard of any allegations by Mace that Bryant had acted inappropriately toward her in a sexual manner – that is, until February 10, 2025.

49.     On February 10, 2025, Nancy Mace delivered a speech from the floor of Congress.

50.     The purpose of Mace's February 10, 2025, speech was purportedly to shed light on the epidemic of sexual crimes against females in America and to do so through the revelation of Mace's alleged personal experiences with Bryant and/or others.  In reality, it was retribution against Bryant after a failed campaign of blackmail and extortion.

51.     Other than to inflict pain on Bryant's friend, it is unclear as to the reasons why Mace and team chose to include Brian Musgrave in her speech on the floor on the evening of February 10, 2025.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

52.    As Congresswoman Mace took to the floor of Congress on February 10, 2025, Musgrave was at home with his wife.

53.    On February 10, 2025, Congresswoman Mace spent over an hour on the floor of Congress systematically defaming Brian Musgrave and destroying his good name and reputation.

54.    Moreover, Congresswoman Mace and her team had prepared a poster to use during the speech that included Brian Musgrave's name and picture with the title "Predators."

55.    To be clear, Musgrave has no idea what transpired in the intimate relationships between Congresswoman Mace and any of her romantic partners.

56.    Musgrave did not rape Congresswoman Mace.

57.    Musgrave has never used a video camera to observe Congresswoman Mace or any other woman engaged in a sex act.

58.    Musgrave has never filmed Congresswoman Mace or any other woman engaged in a sex act.

59.    Musgrave has never assisted any other person in sexually assaulting Congresswoman Mace or any other woman.

60.    Musgrave has never used drugs or alcohol to incapacitate Congresswoman Mace or any other woman.

61.    Musgrave can only recall a handful of occasions when he was in the presence of Congresswoman Mace.

62.    Still, on the evening of February 10, 2025, Congresswoman Mace leveled all these accusations at Brian Musgrave.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

63.     Musgrave's only nexus to any of the conduct described in Congresswoman Mace's speech is that he owns a beach condominium in common with his friend, Patrick Bryant, through a limited liability company in which both men own an interest.

64.     Musgrave was not present for and had no knowledge of any of the matters described in Congresswoman Mace's speech.

65.     On February 10, 2025, Musgrave learned that he had been defamed by Congresswoman Mace and team when he received a call from a reporter with the Wall Street Journal seeking comment.

66.     Shortly after the speech, one of the men that Ms. Mace accused on the floor of Congress of being a rapist, a sex trafficker and a predator was arrested.

67.     The arrest had nothing to do with Brian Musgrave.

68.     On April 11, 2025, Ms. Mace appeared on Defendant OAN and was interviewed by Dan Ball about the arrest of one of the Mace accused.

69.     During the interview, Defendant Ball took the following defamatory shot at Brian Musgrave:

> "**One of the perverts** that you went after when you called **them** out and doxed them on the house floor finally got arrested.  You're getting some satisfaction here, Nancy."  **Emphasis Added**.

70.     During the April 11, 2025, interview, Defendants OAN and Ball defamed Brian Musgrave by referring to him by as a pervert.

71.     During the April 11, 2025, interview, Defendants OAN and Ball defamed Brian Musgrave implicitly by adopting the point of view that he is a rapist, a sex trafficker and/or a predator as alleged in Ms. Mace's speech.

72. During the April 11, 2025, interview, Defendants OAN and Ball defamed Brian Musgrave by communicating that he should be arrested for his crimes.

73. Upon information and belief, the April 11, 2025, interview has been aired, released and/or distributed repeatedly.

74. Each publication and re-publication of the interview is separately actionable as defamation.

75. On May 22, 2025, Nancy Mace appeared on the podcast Louder with Crowder, during which she engaged in a long discourse about her speech and about the men she had accused of committing sexual crimes, including Brian Musgrave.

76. During the exchange, the Louder with Crowder hosts grouped Brian Musgrave along with the other men that Nancy Mace identified in her speech in making the following defamatory statements about all of them, including specifically Brian Musgrave:

    a. "These guys deserve every ounce of punishment we can give them." Defendant Morgan.

    b. "With that amount of evidence it would seem like that there will be some people put in prison for life." Defendant Crowder.

77. During the May 22, 2025, interview, Defendants Crowder Show, Crowder and Morgan defamed implicitly by adopting the point of view that he is a rapist, a sex trafficker and/or a predator as alleged in Ms. Mace's speech.

78. During the May 22, 2025, interview, Defendants Crowder Show, Crowder and Morgan defamed Brian Musgrave by communicating that evidence existed to support the idea that he should be arrested for his crimes.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

79.     During the May 22, 2025, interview, Defendants Crowder Show, Crowder and Morgan defamed Brian Musgrave by communicating that evidence existed to support the idea that he should spend the rest of his life in prison for his crimes.

80.     Upon information and belief, the May 22, 2025, interview has been aired, released and/or distributed repeatedly.

81.     Each publication and re-publication of the interview is separately actionable as defamation.

**For a First Cause of Action as against Defendant OAN**
**Defamation Per Se**

82.     The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

83.     On April 11, 2025, Ms. Mace appeared on Defendant OAN and was interviewed by Defendant Ball about the arrest of one of the Mace accused.

84.     During the interview, Ball took the following defamatory shot at Brian Musgrave:

>     "**One of the perverts** that you went after when you called them out and doxed them on the house floor finally got arrested.  You're getting some satisfaction here, Nancy."  **Emphasis Added**.

85.     During the April 11, 2025, interview, Defendants OAN and Ball defamed Brian Musgrave implicitly by adopting the point of view that he is a pervert.

86.     During the April 11, 2025, interview, Defendants OAN and Ball defamed Brian Musgrave implicitly by adopting the point of view that he is a rapist, a sex trafficker and/or a predator as alleged in Ms. Mace's speech.

87.     During the April 11, 2025, interview, Defendants OAN and Ball defamed Brian Musgrave by communicating that he should be arrested for his crimes.

14

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

88.    Upon information and belief, the April 11, 2025, interview has been aired, released and/or distributed repeatedly.

89.    Each publication and re-publication of the interview is separately actionable as defamation.

90.    These and other false statements were published to third parties.

91.    The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury.  Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

92.    The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendants OAN and Ball the seriousness of their conduct and to deter such similar conduct in the future.

**For a Second Cause of Action as against Defendants Crowder Show, Crowder and Morgan Defamation Per Se**

93.    The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

94.    On May 22, 2025, Nancy Mace appeared on the podcast Louder with Crowder, during which she engaged in a long discourse about her speech and about the men she had accused of committing sexual crimes, including Brian Musgrave.

95.    During the exchange, the Louder with Crowder hosts grouped Brian Musgrave along with the other men that Nancy Mace identified in her speech in making the following defamatory statements about all of them, including specifically Brian Musgrave:

    a.    "These guys deserve every ounce of punishment we can give them." Defendant Morgan.

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829

b.  "With that amount of evidence it would seem like that there will be some people put in prison for life." Defendant Crowder.

96.  During the May 22, 2025, interview, Defendants Crowder Show, Crowder and Morgan defamed implicitly by adopting the point of view that he is a rapist, a sex trafficker and/or a predator as alleged in Ms. Mace's speech.

97.  During the May 22, 2025, interview, Defendants Crowder Show, Crowder and Morgan defamed Brian Musgrave by communicating that evidence existed to support the idea that he should be arrested for his crimes.

98.  During the May 22, 2025, interview, Defendants Crowder Show, Crowder and Morgan defamed Brian Musgrave by communicating that evidence existed to support the idea that he should spend the rest of his life in prison for his crimes.

99.  Upon information and belief, the May 22, 2025, interview has been aired, released and/or distributed repeatedly.

100.  Each publication and re-publication of the interview is separately actionable as defamation.

101.  The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendants Crowder Show, Crowder and Morgan the seriousness of their conduct and to deter such similar conduct in the future.

WHEREFORE, the Plaintiff is entitled to and prays for a judgment against the Defendants, both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendants the seriousness of their conduct and to deter such similar conduct in the future, as well as an Order permanently

enjoining the Defendants from defaming the Plaintiff, together with an award of attorney's fees and costs and such additional relief as the Court deems just and proper.

Charleston, South Carolina
October 1, 2025

**BLAND RICHTER, LLP**
***Attorneys for Plaintiffs***

*s/Ronald L. Richter, Jr.*
Ronald L. Richter, Jr. (SC Bar No. 66377)
*s/Scott M. Mongillo*
Scott M. Mongillo (SC Bar No. 16574)
Peoples Building
18 Broad Street, Mezzanine
Charleston, South Carolina 29401
T: 843.573.9900 | F: 843.573.0200
ronnie@blandrichter.com
scott@blandrichter.com

*s/Eric S. Bland*
Eric S. Bland (SC Bar No. 64132)
105 West Main Street, Suite D
Lexington, South Carolina 29072
T: 803.256.9664 | F: 803.256.3056
ericbland@blandrichter.com

ELECTRONICALLY FILED - 2025 Oct 01 1:41 PM - YORK - COMMON PLEAS - CASE#2025CP4603829